IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      Case No. 1:24-cr-000438-MLG-1

ZEBADIAH ROMERO,

    Defendant.

**MEMORANDUM ORDER AND OPINION DENYING
GOVERNMENT'S MOTION FOR A MENTAL HEALTH EXAMINATION**

Defendant Zebadiah Romero is charged with one count of first-degree murder of John Doe in violation of 18 U.S.C. §§ 1111 and 1152 and one count of using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii). On August 18, 2025, Romero filed a Notice of Intent to Offer Expert-Witness Testimony of Dr. Simone Viljoen following her clinical evaluation of Romero's mental condition at the time of the alleged offense. Doc. 48. Pursuant to Federal Rule of Criminal Procedure 12.2(c)(1)(B), the Government now moves the Court to order Romero to the custody of the U.S. Bureau of Prisons ("BOP") to undergo an independent mental evaluation in order for the Government to fairly rebut Romero's expert evidence. Doc. 49 at 3. The Court finds an independent mental evaluation is not necessary for the Government to prepare its rebuttal evidence and denies its motion for a lengthy custodial mental examination that will, assuredly, delay trial.

## BACKGROUND

On April 9, 2024, Romero, a non-Indian, was indicted for first-degree murder of John Doe, an Indian, in Indian country.[1] Doc. 4. At arraignment, Romero entered a not guilty plea and requested a trial setting before the Court. Doc. 18. Pretrial proceedings followed, and Romero's jury trial is scheduled to begin on November 10, 2025. *See* Doc. 31.

In preparation for trial, Romero served the United States a notice of intent to introduce forensic psychologist Dr. Simone Viljoen's expert-witness opinion of Romero's mental condition at the time of the alleged crime. *See* Doc. 48 at 1-2. The notice stated that Dr. Viljoen's testimony would be based on her clinical impressions from a series of interviews and neuropsychological exams she conducted with Romero in February 2025. *See id.* at 2. Romero expected that Dr. Viljoen's findings would be proffered as part of a sentencing hearing rather than trial. *See* Doc. 50-1 at 1 (demonstrating that Dr. Viljoen authored her report as a "Sentencing Mitigation Evaluation"). Accordingly, her report was provided to the Government well in advance of the relevant expert disclosure deadline. *See* Doc. 39. Indeed, on February 13, 2025, defense counsel shared with the Government a copy of Dr. Viljoen's written findings and conclusions, including her diagnoses of posttraumatic stress disorder ("PTSD"), opioid-use disorder ("OUD"), and major depressive disorder ("MDD"). *See id.*[2]

---

[1] The Court uses the terms "Indian" and "non-Indian" only because they comport with the relevant statutory nomenclature.

[2] Though the report contains several conclusions regarding Romero's mental state at the time of the offense, Dr. Viljoen's trial testimony will be limited to addressing how PTSD, OUD, and MDD diagnoses may impact someone's decision-making processes generally—without drawing any specific connections to Romero, his evaluation, or how his diagnoses may bear on the issue of guilt in the present case. *See* Doc. 50-1 at 26-32; Doc. 93.

After Romero disclosed that he would be calling Dr. Viljoen to testify on his behalf, the United States moved the Court, pursuant to Federal Rule of Criminal Procedure 12.2(c)(1)(B), to commit Romero to a BOP facility for an in-custody mental examination. Doc. 49 at 1. The United States claims that an independent BOP evaluation is necessary for the Government to fairly rebut Dr. Viljoen's expert testimony. *See id.* at 2.

Predictably, Romero disagrees. He asserts that a BOP evaluation is unnecessarily duplicative of previous mental examinations conducted by Dr. Viljoen and various government doctors from the U.S. Department of Veteran's Affairs ("VA"). *See* Doc. 54 at 2-3 (noting that all VA examinations conducted in the last decade have ended in the same PTSD, OUD, and MDD diagnoses endorsed in Dr. Viljoen's report); *see also* Doc. 50-1 at 11-14 (detailing Romero's extensive mental health treatment by VA doctors from November 2015 through May 2023). Further, Romero raises both speedy trial and access-to-effective-assistance-of-counsel concerns under the Sixth Amendment. *See* Doc. 54 at 5 ("Granting the government's request would amount to giving the government a continuance . . . . Transfer to the BOP for an evaluation is a months-long process."); *id.* (arguing that committing Romero to an in-custody examination by the BOP would require Romero to be "shuttled through an endless series of jails and facilities[,]" effectively barring his counsel from "meet[ing] with him, . . . help[ing] him prepare for trial, . . . and assist[ing] him in preparing his defense). Romero also questions whether the Court has authority under either 18 U.S.C. §§ 4241 or 4242 to order custodial examinations "'for mental conditions raised under Rule 12.2(b).'" *Id.* at 4 (first quoting *United States v. Visinaiz*, 96 F. App'x 594, 600 (10th Cir. 2004), then citing *United States v. Rinaldi*, 351 F.3d 285, 289 (7th Cir. 2003) and *United States v. Davis*, 93 F.3d 1286, 1295 (6th Cir. 1996)).

After considering the relevant filings and hearing oral argument on the motion on October 17, 2025, the Court denies the Government's motion for an order committing Romero to BOP custody for a lengthy independent psychiatric examination less than one month before trial.

## DISCUSSION

The Federal Rules of Criminal Procedure permit defendants "to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt . . . within the time provided for filing a pretrial motion" so long as the defendant "notif[ies] an attorney for the government in writing of this intention and file[s] a copy of the notice with the clerk." Fed. R. Crim. P. 12.2(b). Once the defendant provides notice of intent to introduce expert-witness testimony about their mental condition, "the court *may*, upon the government's motion, order the defendant to be examined under procedures ordered by the court." *Id.* at 12.2(c)(1)(B) (emphasis added).[3] This language is permissive, and so the decision is largely left to the discretion of the trial court because "[u]nlike evidence of a defendant's competency or sanity, expert evidence relating to a mental disease, defect, or other condition, is extremely varied, requiring a case-by-case analysis to determine how extensive an examination is warranted in order for the government to fairly prepare for this evidence at trial." *Visinaiz*, 96 F. App'x at 599 (citing *Davis*, 93 F.3d at 1293)).

The Court has authority to order noncustodial examinations for mental conditions raised under Rule 12.2(b) upon its own discretion. *See id.* at 600 (citing Fed R. Crim. P. 12.2(b) advisory

---

[3] In contrast, if the defendant provides notice of intent to assert an insanity defense and the government moves for an independent mental examination, the court does not have discretion to decline the request. Pursuant to 18 U.S.C. § 4242(a), the court *must* order the defendant to be examined upon the government's motion. *See id.* Here, Romero is not asserting an insanity defense. *See* Doc. 54 at 4-5. Therefore, the Court has discretion to decide whether or not to grant the Government's motion for a mental examination.

4

committee's note to 2002 amendment ("[T]he 2002 amendments to Rule 12.2 indicate no statutory counterpart exists for Rule 12.2(b) examinations, but . . . in exercising its discretion, the court may be 'informed' by other provisions that address hearings, including for example, '18 U.S.C. § 4241, et seq.'"); *United States v. McSherry*, 226 F.3d 153, 156-57 (2d Cir. 2000) (collecting circuit court cases that "have reaffirmed orders requiring a psychiatric examination on the basis of a federal court's inherent power to 'supervise the administration of criminal justice in order to ensure fundamental fairness'")); *but see United States v. Overton*, Cr. No. 17-3564 JAP, 2019 U.S. Dist. LEXIS 187114, at *5 (D.N.M. Oct. 29, 2019) ("[T]he Court is [not] aware of . . . any Tenth Circuit authority recognizing an inherent authority" to compel a defendant "to submit to a mental health evaluation by the United States' expert" when the defendant intends to offer expert evidence of a mental condition without any accompanying insanity defense). But the scope of the Court's authority to order a custodial examination (as opposed to a noncustodial examination) following a defendant's Rule 12.2(b) notice of intent to offer expert-witness testimony of a mental condition is less clear. *Compare Davis*, 93 F.3d at 1295 ("[N]either Rule 12.2(c) nor 18 U.S.C. §§ 4241 and 4242 authorizes a district court to order a custodial pretrial examination of the defendant concerning his or her mental state at the time of the offense.") *and United States v. Rinaldi*, 351 F.3d 285, 289 (7th Cir. 2003) (recognizing that although *Davis* was decided before 2002 amendments clarified the court's authority to order an examination after a notice of intent to offer mental-condition evidence, "[t]he fact that the rule [does] not address the in-custody [aspect] suggests that the new rule left the prohibition on in-custody evaluations intact."), *with United States v. Russell*, No. 3:22-cr-58-DJH, 2023 U.S. Dist. LEXIS 24635, at *3 (W.D. Ky. Feb. 14, 2023) ("[N]othing in the current rule or committee's commentary suggests that custodial examination is impermissible . . . .) *and United States v. Northington*, No. 07-550-05, 2012 U.S.

Dist. LEXIS 112960, at *17 (E.D. Pa. Aug. 10, 2012) ("The Court's authority to permit the Government to conduct an [in-custody] examination at the [Medical Center for Federal Prisoners] is expressly provided in the Rules."). The Tenth Circuit has yet to expressly rule on the matter.

In this case, Dr. Viljoen's testimony will be cabined to a narrow set of issues—none of which are particular to Romero.[4] Rather, as explained above, she will be speaking generally and will not be offering opinions about Romero's specific characteristics or whether he could form the mens rea necessary to sustain a first-degree murder verdict. Accordingly, the Government has a variety of means to fairly prepare for their rebuttal against Dr. Viljoen's expert-witness testimony at trial. As one example, the Government may retain its own expert to review Dr. Viljoen's thirty-three-page report and challenge any of the opinions she provides at trial.[5] *See, e.g., United States v. Akers*, 945 F. Supp. 1442, 1449 (D. Colo. 1996) (challenging the government's fairness

---

[4] An independent BOP evaluation is not necessary for the Government to fairly prepare rebuttal evidence. *See* Doc. 93; *see also Visinaiz*, 96 F. App'x at 599 (requiring the Court to make a factual determination that an independent examination is necessary for the Government to fairly prepare for trial after receiving defendant's Rule 12.2(b) notice of intent (citing *Davis*, 93 F.3d at 1293)).

[5] The Government's duty to disclose under Federal Rule of Criminal Procedure 16(a)(1)(G) applies to "any testimony that the government intends to use at trial under Federal Rule of Evidence 702, 703, or 705 during its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed . . . ." The second subsection of this provision requires that the Court "set a time for the government to makes its [expert witness] disclosures" and ensure it is "sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence." In other words, the disclosure deadline for a rebuttal witness is left to the discretion of the Court. The Court's pretrial deadlines and procedures for criminal cases were circulated to the parties on April 25, 2024. *See* Doc. 20-1. These instructions preliminarily stated that "[d]isclosure of any opinion/expert testimony pursuant to Fed. R. Evid. 702 and . . . 404(b)" should be made at least forty-five days prior to trial. *Id.* at 1. But further instruction is provided regarding rebuttal witnesses: "[E]ach party reserves the right to call such rebuttal witnesses (who are not presently identifiable as rebuttal witnesses) as may be necessary" following the pretrial deadlines set by the Court. *Id.* at 2. Until the Court issued this Order resolving the United States' motion for a mental examination, the Government could not have known that an alternate rebuttal witness would be necessary. Therefore, the Court finds good cause for the Government to disclose an alternate rebuttal witness past the forty-five-day pretrial deadline for expert-witness disclosures, but on or before November 3, 2025. *See* Doc. 93.

argument by noting "[t]he government may, *inter alia*, retain its own expert to review and assess the defense expert's report, to attend the trial, to testify about his/her evaluation of the report, and testify as to his/her observations of the defendant"). Further, given that Dr. Viljoen will be offering non-specific opinions regarding the impacts of PTSD, OUD, and MDD on decision-making, there will be ample opportunity for thorough cross-examination. *See Overton*, 2019 U.S. Dist. LEXIS 187114, at *2 ("If . . . this evidence is ultimately before a jury, the United States will have the opportunity to cross examine Defendant's expert witness" and "is entitled to discovery of the medical and treatment reports relied on by [the expert], as well as her expert report.").

Other considerations militate against granting the Government's request. Specifically, that result would require the Court to continue the trial. *See* Doc. 49 ("The United States moves this Court to commit Defendant to the custody of the United States Attorney General for a reasonable period of time, not to exceed 45 days, for an evaluation . . ."); *see also* Doc. 39 (order scheduling a firm trial date beginning November 10, 2025, seventeen days from the date of this order being filed). In effect, the Government argues that continuing the trial is necessary for fairness purposes because "Defendant did not provide notice to the United States that he intended to seek a mental condition defense until the very last day of the pretrial motions deadline . . ." *See* Doc. 68 at 10. The Court is unpersuaded by this argument. Rule 12.2(b) specifies that a notice of intent to introduce expert evidence of a mental condition must be filed by the defendant "within the time provided for filing a pretrial motion or at any later time the court sets." Romero filed the appropriate Notice of Intent before the pretrial motion deadline lapsed. *See* Doc. 48 (noting a filing date of August 18, 2025); Doc. 20-1 (instructing the parties on pretrial deadlines and procedures for criminal cases before this Court and setting a deadline of all pretrial motions for thirty days prior to trial in accordance with Fed. R. Crim. P. 45 time-computation guidance).

## CONCLUSION

For the foregoing reasons, the United States' Motion for an Examination in Response to Defendant's Notice of Intent to Offer Evidence of a Mental Condition Pursuant to Rule 12.2(b) of the Federal Rules of Criminal Procedure, Doc. 49, is denied.

                                                                    _____
                                                                    UNITED STATES DISTRICT JUDGE
                                                                    MATTHEW L. GARCIA